# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CAROLYN ARLENE WHITE,

      Petitioner,

  v.                                CASE NO. 2:08-CV-356
                                    JUDGE FROST
                                    MAGISTRATE JUDGE KING

SHERI DUFFEY, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On the morning of April 1, 2005, Jodi Schlosser ("Ms .Schlosser") was living in Galloway with Terry Green ("Green") and her children from her previous marriage to Scott Schlosser. Ms. Schlosser was getting ready to leave the house to baby sit her sister's children. Green had briefly left the house with his son, who was staying with him during spring break, to check on his mother's house, and to go to the store to get coffee and a newspaper. Ms. Schlosser's children were staying with their father, Scott, at the time.

Ms. Schlosser was in an upstairs bedroom in the house when she saw a black male wearing gloves enter the room, pointing a gun at her. The man told her to lie down on the bed, and that he would not hurt her if she remained quiet. He placed duct tape over her eyes and mouth; the tape over her eyes did not completely obscure her vision. The roll of duct tape that was used was later recovered from the bedroom. The man walked Ms. Schlosser out of the house through the garage, holding the gun to her head the whole time.

Once outside on the driveway, Ms. Schlosser saw a red Tahoe with dark-tinted windows parked on the street in the area between her house and the neighboring house. She recognized the Tahoe because she had seen the vehicle parked next to her car outside her place of employment the previous day. At that point, Ms. Schlosser pulled the duct tape from her eyes and mouth, dropped to the ground, and started screaming. Ms. Schlosser's neighbor, Julia Bricker, came out of her house in response to the screaming. The male pointed the gun at her, then back at Ms. Schlosser, and then fled on foot in the direction of Hall Road. The Tahoe had pulled away at some point during the commotion.

Julia Bricker's husband, John, had called 911, and Ms. Schlosser went into the Brickers' house to talk to the 911 operator. Ms. Schlosser and Julia Bricker each saw the red Tahoe driving back through the area at this time. After talking to the police, John Bricker contacted Green on his mobile phone to tell him what had happened. Upon being told that there was a red Tahoe involved, Green remembered that he had seen a red Tahoe driving by the house two or three times the previous evening while he and his son were shooting basketball. Green testified that appellant was driving the Tahoe at that time.

Shortly after that, Green saw a red Tahoe in the parking lot of the CVS at the intersection of Hall Road and Norton Road. Green directed his son to get out of the car, and then drove into the CVS parking lot and stopped behind the Tahoe. Green saw a black male run across a field to the parking lot, and yelled at the man, who then showed Green a gun. The driver of the Tahoe opened the passenger door, and the male jumped in.

Green then rammed the Tahoe with his vehicle, and the Tahoe pulled out of the parking lot. Green followed in his vehicle and called 911. At one point, the Tahoe stopped, and the male passenger waved the gun at Green out the window before the Tahoe began moving again. Eventually, Green bumped the Tahoe again, and the Tahoe got caught on the road's guardrail shortly before the police arrived.

Danny Burns, an auxiliary officer with the Harrisburg Police Department, was one of the first police officers on the scene. Burns testified that, as he and Harrisburg Police Sergeant Scott O'Neal arrived, they saw the Tahoe ahead of them, with a male driver, and saw appellant walking toward them away from the Tahoe. Appellant told them someone had attempted to carjack her vehicle. Burns characterized appellant's demeanor as calm and relaxed.

Columbus Police Department crime scene Detective William Snyder testified that he searched the Tahoe. Detective Snyder recovered a loaded handgun from the Tahoe. He also noted that the back seat had been completely covered with bed sheets and blankets. Additional rolls of duct tape and heavy-duty trash bags were also found in the Tahoe.

The black male who assaulted Ms. Schlosser and who was arrested at the scene where the Tahoe finally stopped was ultimately identified as Bartallen Brown ("Brown"). Brown testified that on March 31, 2005, he was waiting at a bus stop at the corner of Parsons Avenue and Broad Street when appellant, who he said he had never met, pulled up and asked him to get in her vehicle, stating that she had a proposition for him. Appellant told Brown about problems she was experiencing because of Ms. Schlosser, who she identified as her boyfriend's ex-wife. Appellant offered to pay Brown in return for his assistance in getting Ms. Schlosser to get into appellant's vehicle, stating that she wanted Ms. Schlosser to make a telephone call for her. Brown also testified that appellant subsequently said she wanted to hurt Schlosser.

Appellant and Brown drove to a number of locations that day, where they purchased gloves, hand sanitizer, trash bags, and

duct tape. At that time, there were no bed sheets or blankets covering the back seat of the Tahoe. The two also drove to an ATM where appellant withdrew $600 that she said she would give Brown later, and also drove to Ms. Schlosser's place of employment and to the area around Ms. Schlosser's house. That night, Brown went to a friend's house to retrieve a handgun, although Brown stated he did not believe the gun worked. The next morning, appellant picked Brown up, and Brown noticed that the back seat was now covered. Brown testified that appellant told him he should go into Ms. Schlosser's house and bring her out to the Tahoe.

Scott Schlosser testified that he had met appellant some time in November or December of 2004. The two dated for a brief period, until Schlosser broke up with her. Appellant continued to contact him for some time thereafter, but ultimately the relationship was completely ended.

Appellant was ultimately indicted for aggravated burglary with a gun specification, kidnapping with a gun specification, possession of criminal tools, and carrying a concealed weapon. Appellant was also charged with conspiracy to commit murder for an alleged attempt to hire a hit man to kill Ms. Schlosser while appellant was incarcerated awaiting trial. Appellant pled not guilty on all of the charges, and filed a Request for Bill of Particulars from the state, seeking to have the state specify whether appellant was being charged as an aider and abetter, or as an actual perpetrator. The bill of particulars provided by the state in response did not refer to appellant as a complicitor in the charges, but was worded in terms of the principal offender. During opening statements in the jury trial, the state made it clear that it was proceeding on a theory that appellant aided and abetted the commission of the crimes charged, but was not the principal offender. Appellant moved for a mistrial, arguing that the state's theory did not comport with the bill of particulars that had been provided. The trial court overruled the motion for mistrial.

After a jury trial, appellant was acquitted on the charge of conspiracy to commit murder, and convicted on all of the remaining charges, including the gun specifications. On Count

1, the charge of aggravated burglary, appellant was sentenced to a term of five years incarceration. On Count 2, the charge of kidnapping, appellant was sentenced to a term of ten years incarceration, plus three years incarceration for the gun specification. These sentences on Counts 1 and 2 were ordered to be served consecutively. On Count 3, the charge of possession of criminal tools, appellant was sentenced to a term of 12 months incarceration. On Count 4, the charge of carrying a concealed weapon, appellant was sentenced to a term of 18 months incarceration. The sentences on Counts 3 and 4 were ordered to be served concurrently with each other, but consecutively to the sentences on Counts 1 and 2.

*State v. White,* 2007 WL 1816286 (Ohio App. 10th Dist. June 21, 2007). Petitioner filed a timely appeal, in which she asserted the following assignments of error:

> I. Defendant was deprived of a fair trial when the State was permitted after providing a Bill of Particulars that she was the actual perpetrator vis a vis [sic] aider and abetter to proceed on the theory of being an aider and abetter, and the Defendant's Motion for Mistrial when this was revealed in the opening statement was overruled.
>
> II. The Trial Court erred in sentencing the Defendant to the maximum sentence for an F-1 for kidnapping given the fact that it was undisputed that the victim was released unharmed.
>
> III. The conviction of the Defendant for carrying a concealed weapon in violation of §2923.12 of the Ohio Revised Code supported was not [sic] by the quantity of evidence required by law and was against the manifest weight of the evidence.
>
> IV. The Defendant was deprived of her rights to due process of law and equal protection under the Constitution of the United States and the State Constitution. Further given the recent Supreme Court decision of *State v. Foster* 109 Oh. St. 1, 3d [sic] 2006-Oh. 856[sic], removing the statutes granting the Court authority to impose consecutive sentences under circumstances such as this the Court lacked jurisdiction to impose consecutive sentences on the counts in question.

*See id.* On June 21, 2007, the appellate court affirmed the trial court's judgment. *Id.* On October 24, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. White*, 115 Ohio St.3d 1444 (2007).

On April 16, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. As her sole ground for federal habeas corpus relief, petitioner asserts that she was denied due process because the trial court lacked jurisdiction to sentence her to consecutive terms of incarceration. It is the position of the respondent that this claim has been waived and is without merit.

**FAIR PRESENTMENT**

Respondent contends that petitioner waived her federal claim for federal habeas corpus review by failing to present the claim to the state courts as a federal constitutional issue. In order to exhaust available state remedies, a petitioner must first fairly present the substance of her federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55 (6th cir. 1986). A petitioner does not fairly present a claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears to be self-evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless,* 459 U.S. at 6). Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a

provision of the Constitution, federal decisions employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984). Petitioner, however, need not "cite book and verse on the federal constitution." *Picard*, 404 U.S. at 277 (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1960)). The Sixth Circuit has strictly followed the requirement that a petitioner fairly presented all federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).

Here, petitioner generally asserted on direct appeal that the trial court's sentence violated her right to due process and equal protection under the United States and Ohio Constitutions. However, petitioner referred to not a single federal case or state case relying on federal law in support of this claim and argued only that the trial court lacked jurisdiction under Ohio law. *See Exhibits 9, 13*. The state appellate court likewise reviewed the claim for a violation of only state law:

> In her fourth assignment of error, appellant argues that the trial court had no authority to impose consecutive sentences based on the Ohio Supreme Court's decision in *Foster, supra*. Appellant argues that the *Foster* court struck down the general statutory provision allowing for imposition of consecutive sentences, the only remaining statutory provisions allowing imposition of consecutive sentences are those provisions that call for imposition of consecutive sentences in specific cases, such as mandatory sentencing on gun specifications.
>
> However, the *Foster* court specifically recognized that its remedy severing those statutory provisions calling for sentencing based on judicial fact finding left trial courts with

7

> extremely broad authority in fashioning sentences. The court stated, "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster, supra*, at paragraph seven of the syllabus. Based on this broad authority, the sentence imposed by the trial court in this case was within the court's authority. Therefore, appellant's fourth assignment of error is overruled.

*State v. White, supra.*

Petitioner, however, contends that she fairly presented her federal claim to the state courts by invoking the due process and equal protection clauses of the United States Constitution. She argues that her federal claims were self evident from her pleadings. *See Traverse*. This Court disagrees.

> A petitioner fairly presents the substance of his federal constitutional claim to the state courts by (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.2003).

*Richter v. Jeffreys*, 2007 WL 2572250 (N.D. Ohio, August 31, 2007). This Court concludes that petitioner's general invocation of the federal due process and equal protection clauses was insufficient to fairly present a federal constitutional claim of denial of due process to the state courts. *See* Ohio R. App. P. 16(A)(7). Because petitioner may no longer present this claim to the Ohio courts, *see State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph 9 of the

syllabus, petitioner has waived this Court's consideration of the merits of this federal claim. *See Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986).

Even assuming otherwise, however, petitioner's claims plainly lack merit.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), factual findings of the state appellate court are presumed to be correct. Title 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Ordinarily, a decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Here, however, and because the state appellate court did not address federal law in

9

rejecting petitioner's claim, this Court should, arguably, conduct a less deferential standard of review:

> There are three options: the deferential standard [of review] provided under § 2254(d); the *de novo* standard, and the "intermediate approach." *See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (discussing alternate standards); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003) (same); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005) (same). The gist of circuit precedent is that when there is a decision, deference is accorded under § 2254(d) to the state court decision under the "intermediate approach." *Maldonado v. Wilson*, 416 F .3d 470, 476 (6th Cir. 2005); *Howard*, 405 F.3d at 467. When there is no decision or "no results," federal review is *de novo. See Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (*de novo* when there was no state court decision on second prong of *Strickland* test). When the state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning." *Howard v. Bouchard*, 405 F.3d at 467; *McKenzie*, 326 F.3d at 727. As illustrated in *McKenzie*, the "no reasoning" situation occurs when the state court has issued a summary order, which fails to explain its reasoning, as opposed to the situation where no state court has "directly addressed the specific issue." In the latter situation there are "no results" for the federal court to defer, and *de novo* review by the federal court is required. *See Wiggins v. Smith*, 539 U.S. at 534; *McKenzie*, 326 F.3d at 727.

*Socha v. Wilson*, 447 F.Supp.2d 809, 819 (N.D. Ohio 2007). Whether this Court conducts *de novo* review or applies a more deferential standard of review, the Court nevertheless concludes that petitioner has failed to present a federal due process claim warranting federal habeas corpus relief.

The crux of petitioner's claim before this Court is that the imposition of consecutive sentences on her violated her right to due process. Petitioner seems to specifically argue

10

that, after the Ohio Supreme Court struck down Ohio's sentencing scheme in *Foster,* there is no Ohio statute that authorizes the imposition of consecutive sentences.

Petitioner's federal claim turns on a construction of state law.[1] The federal due process clause is simply not implicated when a state court imposes consecutive sentences in a manner that appears to be authorized by state law. *See Harrison v. Parke*, 917 F.2d 1304 (6th Cir. 1990) (table), 1990 WL 170428, *2 (unpublished). Notably, the Ohio Supreme Court has rejected the argument that Ohio courts lack jurisdiction, after *Foster*, to impose consecutive sentences:

> The severance and excision of former R.C. 2929.14(E)(4) and former R.C. 2929.41(A) in their entirety by *Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph four of the syllabus, leaves no statute to establish in the circumstances before us presumptions for concurrent and consecutive sentencing or to limit trial court discretion beyond the basic "purposes and principles of sentencing" provision articulated and set forth in R.C. 2929.11 and 2929.12. As a result, the common-law presumptions are reinstated. 73 American Jurisprudence 2d (2007), Statutes, Section 271 (the repeal of a statute that abrogates the common law operates to reinstate the common-law rule). Such a conclusion is also consistent with the perspective of the Ohio Criminal Sentencing Commission, which opined that after *Foster*, judges have broader discretion within felony ranges to impose definite and consecutive sentences. *Diroll, A Decade of Sentencing Reform, A Sentencing Commission Staff Report* (Mar.2007) 19. In particular, "[j]udges are no longer guided to give concurrent sentences unless circumstances argue that consecutive sentences are more appropriate." *Id.*
>
> Accordingly, the trial court now has the discretion and

---

[1]The Court notes that petitioner has referred to no decisions of the United States Supreme Court supporting her federal claim.

>     inherent authority to determine whether a prison sentence
>     within the statutory range shall run consecutively or
>     concurrently, and we hold that the trial court may impose a
>     prison sentence to be served consecutively to a prison sentence
>     imposed on the same offender by another Ohio court. *Foster*,
>     109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph
>     seven of the syllabus; Stewart, 174 Ohio St. at 181, 22 O.O.2d
>     116, 187 N.E.2d 888.

*State v. Bates*, 118 Ohio St.3d 174, 179 (2008).

Petitioner asserts that *Bates* is inapplicable, because the Ohio Supreme Court was not addressing the precise issue presented by this case.[2] She also contends that *Bates*, as well as the decision of the state appellate court rejecting her claim, were wrongly decided. *See Traverse*. However, Ohio law has long provided that "in the absence of statute, it is a matter solely within the discretion of the sentencing Court as to whether sentences shall run consecutively or concurrently." *Stewart v. Maxwell,* 174 Ohio St. 180, 181 (1962). Indeed, a sentence that does not specify whether it is to be served concurrently or consecutively is presumed to be consecutive. *Id.* "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988)(quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental

---

[2] The precise issue before the Ohio Supreme Court in *Bates* was "whether, after *Foster,* a trial court imposing a sentence for a new felony conviction may order that sentence to be served consecutively to a sentence previously imposed for a separate felony conviction in a different Ohio court." The Ohio Supreme Court concluded that a trial court could. The parties in *Bates* did not dispute that a trial court could impose consecutive prison terms on multiple felony convictions adjudicated in the same proceeding, which is the issue challenged by petitioner herein. *Bates, supra*, 118 Ohio St.3d at 176.

fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Because it cannot be said that Ohio law prohibits the imposition of consecutive sentences on petitioner, it cannot be said that petitioner was thereby denied her constitutional right to due process. The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

May 29, 2009                                             s/Norah McCann King
                                                         Norah McCann King
                                                         United States Magistrate Judge